# EXHIBIT 1

Recording Requested by:
Orange Coast Title

This Document was electronically recorded by
Orange Coast Title B

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

| 60.00
**2005001035218** 04:30pm 12/28/05
124 51 D11 19
0.00 0.00 0.00 0.00 54.00 0.00 0.00 0.00

NOTE AMOUNT: $388,500.00

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $485,625.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.  **DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
    **(A)  Security Instrument.** This Deed of Trust, which is dated **December 20, 2005**, will be called the "Security Instrument."

Received

FEB 02 2005

Connie Torres

    **(B)  Borrower.** **LUIS A LOPEZ, A MARRIED MAN** sometimes will be called "Borrower" and sometimes simply "I" or "me."

    **(C)  Lender.** **WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES**, will be called "Lender." Lender is a **FEDERAL SAVINGS BANK**, which is organized and exists under the laws of the United States. Lender's address is **1901 Harrison Street, Oakland, CA 94612** .



SD001A (2004-03-2)
DEFERRED INTEREST

DEED OF TRUST-ADJUSTABLE
Page 1

CA

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$388,500.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **January 15, 2036** ("Maturity Date").

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

    (i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

    (ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

    (iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.    DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

    (i)    The Property which is located at **7822 HOPI RD, STANTON, CA  90680-3506.** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

    (ii)    All buildings and other improvements that are located on the Described Property;

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

## 1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.    PAYMENTS FOR TAXES AND INSURANCE

### (A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

**(B)    Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.



### 3. APPLICATION OF BORROWER'S PAYMENTS

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

### 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5. BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.    **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.



**7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.    LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

**10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)    Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)    Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **7822 HOPI RD, STANTON, CA  90680-3506.** A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.



**(B)** The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25.    FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and Interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.



# ORANGE COAST TITLE COMPANY
640 North Tustin Avenue
Santa Ana, California 92705
**(714) 558-2836**

## PENALTY OF PERJURY

Under the provisions of Government Code 2736.17, I certify under the penalty of perjury that the notary seal on this document to which this statement is attached reads as follows:

NAME OF NOTARY: LUPE G. RODRIGUEZ

COMMISSION NUMBER: 1553085        MANUFACTURER/VENDER NO.: NNA1

COUNTY WHERE BOND IS FILED: ORANGE

PLACE OF EXECUTION: SANTA ANA

DATE COMMISSION EXPIRES: FEB. 17, 2009

DATE: DECEMBER 28, 2005

SIGNATURE: _____

_____

Government Code 2736.17

I certify under penalty of perjury that the illegible portion of this document, to which this statement I attached, reads as follows:

PLACE OF EXECUTION:

DATE OF EXECUTION:

SIGNATURE: _____

# EXHIBIT 2

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

DATE: **December 20, 2005**

BORROWER(S): **LUIS A LOPEZ, A MARRIED MAN**   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: **7822 HOPI RD, STANTON, CA  90680-3506**

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$366,500.00** , called "Principal," plus interest, to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK,, ITS SUCCESSORS AND/OR ASSIGNEES**, or anyone to whom this Note is transferred.

### 2. INTEREST

**(A)   Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at the yearly rate of **6.460%.** The interest rate I will pay may change as described in this Section 2. Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)   Interest Change Dates**

The interest rate I will pay may change on the **15th** day of **February, 2006** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

**(C)   Interest Rate Limit**

My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap."





**(D) Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an Index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E) Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **3.400** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F) Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section 2(F), the Index is not "available" if: (a) the Index is for any reason no longer published; or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Lender's sole discretion. The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator. The Lender will give me notice of the alternative index.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **February 15, 2006**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **January 15, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **1,387.90**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C) Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **15th** day of **February, 2007** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**(E)   Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)   Payment Cap Limitation; Exceptions**

Beginning with the 10th Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)   Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.   BORROWER'S RIGHT TO PREPAY**

**I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.**

**6.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be 5.00% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **7822 HOPI RD, STANTON, CA  90680-3506**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement.   I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.



**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial Interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

    (i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

    (ii)    Lender approves the creditworthiness of the transferee in writing;

    (iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

    (iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

    (v)    the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 12. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

## 13. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

## 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____    (Seal)
LUIS A LOPEZ

PAY TO THE ORDER OF
FANNIE MAE
WITH RECOURSE
WORLD SAVINGS BANK, FSB

BY _____
RUBY RODRIGUEZ
ASSISTANT VICE PRESIDENT AN
CUSTODIAN

SD253 (2004-03-1)    [W14 (2004-03-01)]        Page 6 of 6        CA

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A., successor by merger with
Wells Fargo Bank Southwest, N.A., F/K/A Wachovia Mortgage, FSB,
F/K/A World Savings Bank, FSB

Brenda A. Flores
Vice President Loan Documentation

PAY TO THE ORDER OF
FANNIE MAE
WITHOUT RECOURSE
WORLD SAVINGS BANK, FSB

CANCELLED

By: _____
CRAIG SWONSON
VICE PRESIDENT AND
CUSTODIAN OF RECORDS

PAY TO THE ORDER OF
FANNIE MAE
WITHOUT RECOURSE
WORLD SAVINGS BANK, FSB

CANCELLED

BY: Ruby Rodriguez
CARLOS RODRIGUEZ
ASSISTANT VICE PRESIDENT AND
CUSTODIAN OF RECORDS

# EXHIBIT 3



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFICATE OF MERGER

I, John C. Dugan, Comptroller of the Currency, do hereby certify that the document hereto attached is a true and complete copy of the certificate recorded in this Office, evidencing the merger of Wachovia Bank, National Association, Charlotte, North Carolina and Wachovia Bank of Delaware, National Association, Wilmington, Delaware with and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota under the title of "Wells Fargo Bank, National Association," Charter No. 1, effective March 20, 2010.

IN TESTIMONY WHERE OF, I have

hereunto subscribed my name and caused

my seal of office to be affixed to these

presents at the Treasury Department, in the

City of Washington and District of

Columbia, this March 22, 2010.



_John C. Dugan_

Comptroller of the Currency



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

March 20, 2010

Mr. James E. Hanson
Senior Vice President
Wells Fargo Bank. National Association
90 South Seventh Street
Minneapolis. MN 55479

Re:     Applications to merge Wachovia Bank. National Association, Charlotte, North Carolina
        and Wachovia Bank of Delaware, National Association, Wilmington. Delaware with and
        into Wells Fargo Bank, National Association. Sioux Falls, South Dakota
        Application Control Number: 2009-ML-02-0012

Dear Mr. Hanson:

This letter is the official acknowledgement, authorization and certification by the Office of the
Comptroller of the Currency (OCC) that effective March 20, 2010 Wachovia Bank. National
Association, Charlotte, North Carolina and Wachovia Bank of Delaware. National Association,
Wilmington, Delaware merged with and into Wells Fargo Bank, National Association. Sioux
Falls, South Dakota, under the title of the latter.  As result of the merger, the OCC has
renumbered the charter number of Wells Fargo Bank. National Association (the resulting bank)
from charter number 1741 to charter number 1.

This letter is also the official authorization for Wells Fargo Bank, National Association to
operate the former main office of Wachovia Bank of Delaware. National Association and the
branch offices of Wachovia Bank, National Association and Wachovia Bank of Delaware.
National Association as branches of Wells Fargo Bank, National Association. A list of branches
for the resulting bank will be sent under separate cover.

If you have questions regarding this letter. please contact me at (202) 874-5294 or by e-mail at
Stephen.Lybarger@occ.treas.gov.  Please reference the application control number in any
correspondence.

Sincerely.

Stephen A. Lybarger
Large Bank Licensing Lead Expert





Comptroller of the Currency
Administrator of National Banks

Large Bank Licensing

November 1, 2009

Mr. James E. Hanson
Vice President
Wells Fargo Bank, National Association
90 South Seventh Street
Minneapolis, MN 55479

Re:    Application to convert Wachovia Mortgage, FSB, North Las Vegas, Nevada to a national
       bank and application to merge the converted bank with and into Wells Fargo Bank,
       National Association, Sioux Falls, South Dakota
       Application Control Numbers:  2009-ML-01-0007 and 2009-ML-02-0010

Dear Mr. Hanson:

This letter is the official certification of the Comptroller of the Currency (OCC) of the
conversion of Wachovia Mortgage FSB, North Las Vegas, Nevada to a national bank with the
name Wells Fargo Bank Southwest, National Association, effective November 1, 2009.  This is
also the official certification to merge Wells Fargo Bank Southwest, National Association with
and into Wells Fargo Bank, National Association, Sioux Falls, South Dakota, effective
November 1, 2009.

If you have questions regarding this letter, please contact me at (202) 874-5294 or by email at:
Stephen.Lybarger@occ.treas.gov .  Please reference the application control number or numbers
in any correspondence.

Sincerely,

Stephen A. Lybarger
Large Bank Licensing Lead Expert



**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA. 94014-1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NCO630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

*Nicholas J. Dyer*

Nicholas J. Dyer
Assistant Regional Director

cc: Robert Burns, FDIC - Atlanta

January 2, 2008

## ATTENTION

Re: Amendment of World Savings Bank, FSB's charter to change its name

As you know, on October 1, 2006, Golden West Financial Corporation, parent company of World Savings Bank, FSB ("World"), merged with Wachovia Corporation. Since October 1, 2006, the two institutions have undergone several integration procedures, one of which has been an amendment of World's charter to reflect a name amendment. Effective December 31, 2007, World Savings Bank, FSB became known as Wachovia Mortgage, FSB.

The charter amendment and/or name change may affect various matters relating to mortgage loans for which you have been retained. Accordingly, this letter is intended to provide guidance in your efforts to represent Wachovia Mortgage, FSB in those loan related matters. Subject to particular state or local rules, the name change should not require any special pleadings. All pleadings or documents prepared subsequent to December 30, 2007 both in furtherance of any outstanding legal matter or new matter in which the underlying documents reflect World, should set forth a statement of the charter amendment and refer to the surviving entity as, "World Savings Bank, FSB, now known as Wachovia Mortgage, FSB" or "Wachovia Mortgage, FSB formerly known as World Savings Bank, FSB". Should you need a Secretary's Affidavit please contact me.

Should you determine that your jurisdiction requires some other pleading or notice other than as set forth above, which would generate additional attorney fees or costs, please contact me before proceeding forward.

Sincerely,

Kristi Garcia
Assistant General Counsel, Wachovia Corp.
on behalf of Wachovia Mortgage, FSB, its subsidiary
4101 Wiseman Blvd., MC TX1621
San Antonio, TX 78250
tel. 210-543-5747  fax 210-543-3015
kristi.garcia@wachovia.com

EXHIBIT 4

04/19/2018  13:15    714--544-1668    FEDEX OFFICE    0313    PAGE  01

Please **STOP** the sale on my property located at 7822 Hopi Rd. Stanton, CA. 90680.

Sale date Scheduled for today  4/19/18 at 1:30pm

I AM currently under bankruptcy
Bankruptcy Petition #: 2:18-bk-14391-VZ

Vested Party: Pedro Bolanos

TS # 9987-4392

Thank You.

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
Luis Lopez
7822 Hopi Rd.
Stanton, CA 90680

TITLE ORDER NO:

TAX PARCEL NO.: 131-272-02

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

15.00
* S R 0 0 1 0 0 1 1 4 9 5 3 *
2018000129787 8:00 am 04/18/18
47 NC-5 G02   4 17
246.40 246.40 0.00 0.00 9.00 0.00 0.000.000.00 0.00

# GRANT DEED

The Undersigned Grantor(s) Declares that Documentary transfer tax is $ 0.00 and CITY TAX IS $0.00
(x) computed on full value of property conveyed,  OR
( )  computed on the full value less liens of encumbrances remaining at the time of sale

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged:

**Luis A. Lopez, A Married Man As His Sole and Separate Property.**

**hereby GRANT(S) Luis A. Lopez, A Married Man and Pedro Bolanos, A Married Man All as Joint Tenants.**

The following real property in the City of Stanton, County of Orange, State of California:

described as:  See Attached, Exhibit 'A', made a part hereof

More commonly known as:  **7822 Hopi Rd. Stanton, CA 90680.**

**Date: April 18, 2018**

_____
Luis A. Lopez

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA**                    )
**COUNTY OF** Orange                       )
On April 18, 2018                           before me,
Jennifer A. Thomas, a notary public, Personally
appeared
Luis A. Lopez
who proved to me on the basis of  satisfactory evidence to be
the person(s) whose  name(s) is/are subscribed to the within
instrument   and  acknowledged  to  me  that  he/she/they
executed  the  same  in  his/her/their  authorized  capacity(ies),
and  that  by his/her/their  signature(s)  on the instrument  the
person(s) or the entity  upon behalf of which the  person(s)
acted, executed the instrument.
I certify under PENALTY OF PERJURY under  the laws of
the State of California that  the foregoing paragraph is true
and correct.

JENNIFER A. THOMAS
COMM. #2151894
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Com'n. Expires May 4, 2020

Witness my hand and official seal.

Signature Jennifer A. Thomas                    (This area for official notarial seal)

Repeat-cacb, PlnDue, Incomplete, RepeatPACER

## U.S. Bankruptcy Court
## Central District of California (Los Angeles)
## Bankruptcy Petition #: 2:18-bk-14391-VZ

|  |  |
|---|---|
| *Assigned to:* Vincent P. Zurzolo | *Date filed:* 04/18/2018 |
| Chapter 13 | *341 meeting:* 05/17/2018 |
| Voluntary | *Deadline for filing claims:* 06/27/2018 |
| Asset | *Deadline for filing claims (govt.):* 10/15/2018 |

*Debtor*                                                    represented by **Pedro Bolanos**
**Pedro Bolanos**                                                        PRO SE
1459 W 25th Street
Los Angeles, CA 90007
LOS ANGELES-CA
▮▮▮▮▮▮▮▮▮▮

*Trustee*
**Nancy K Curry (TR)**
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017
213-689-3014

*U.S. Trustee*
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 04/18/2018 | 1 (13 pgs; 3 docs) | Chapter 13 Voluntary Petition Individual . Fee Amount $310 Filed by Pedro Bolanos Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 5/2/2018. Schedule A/B: Property (Form 106A/B or 206A/B) due 5/2/2018. Schedule C: The Property You Claim as Exempt (Form 106C) due 5/2/2018. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 5/2/2018. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 5/2/2018. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 5/2/2018. Schedule H: Your Codebtors (Form 106H |

EXHIBIT 5

PlnDue, Incomplete, **DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Central District of California (Santa Ana)
### Bankruptcy Petition #: 8:13-bk-17573-CB

*Date filed:* 09/09/2013
*Date terminated:* 12/27/2013
*Debtor dismissed:* 10/01/2013
*341 meeting:* 10/23/2013

*Assigned to:* Catherine E. Bauer
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for Failure to File
Information

| | |
|---|---|
| **Debtor**<br>**Luis Angel Lopez**<br>7822 Hopi Rd<br>Stanton, CA 90680<br>ORANGE-CA<br>▇▇▇▇▇▇▇ | represented by **Luis Angel Lopez**<br>PRO SE |

*Trustee*
**Amrane (SA) Cohen (TR)**
770 The City Drive South Suite 8500
Orange, CA 92868
714-621-0200

*U.S. Trustee*
**United States Trustee (SA)**
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4593
(714) 338-3400

| Filing Date | # | Docket Text |
|---|---|---|
| 09/09/2013 | <u>1</u><br>(13 pgs; 3 docs) | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Luis Angel Lopez Schedule A due 9/23/2013. Schedule B due 9/23/2013. Schedule C due 9/23/2013. Schedule D due 9/23/2013. Schedule E due 9/23/2013. Schedule F due 9/23/2013. Schedule G due 9/23/2013. Schedule H due 9/23/2013. Schedule I due 9/23/2013. Schedule J due 9/23/2013. Statement of Financial Affairs due 9/23/2013. Chapter 13 Plan due by 9/23/2013. Statement - Form 22C Due: 9/23/2013. Statement of assistance of non-attorney due 9/23/2013. Summary of schedules due 9/23/2013. Declaration concerning debtors schedules due 9/23/2013. Cert. of Credit Counseling due by 9/23/2013. Statistical Summary due 9/23/2013. Debtor Certification of Employment Income due by 9/23/2013. Incomplete Filings due by 9/23/2013. (Roque, Jewell) (Entered: 09/09/2013) |

| | | |
|---|---|---|
| 09/09/2013 | <u>2</u><br>(2 pgs) | Meeting of Creditors with 341(a) meeting to be held on 10/23/2013 at 11:00 AM at RM 1-154, 411 W Fourth St., Santa Ana, CA 92701. Confirmation hearing to be held on 11/14/2013 at 01:30 PM at Crtrm 5D, 411 W Fourth St., Santa Ana, CA 92701. Proof of Claim due by 01/21/2014. (Roque, Jewell) (Entered: 09/09/2013) |
| 09/09/2013 | <u>3</u> | Statement of Social Security Number(s) Form B21 Filed by Debtor Luis Angel Lopez . (Roque, Jewell) (Entered: 09/09/2013) |
| 09/09/2013 | <u>4</u><br>(2 pgs) | Exhibit D Filed by Debtor Luis Angel Lopez . (Roque, Jewell) (Entered: 09/09/2013) |
| 09/09/2013 | | Receipt of Chapter 13 Filing Fee - $281.00 by 01. Receipt Number 80055953. (admin) (Entered: 09/10/2013) |
| 09/11/2013 | <u>5</u><br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)<u>2</u> Meeting (AutoAssign Chapter 13)) No. of Notices: 3. Notice Date 09/11/2013. (Admin.) (Entered: 09/11/2013) |
| 09/11/2013 | <u>6</u><br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)<u>1</u> Voluntary Petition (Chapter 13) filed by Debtor Luis Angel Lopez) No. of Notices: 1. Notice Date 09/11/2013. (Admin.) (Entered: 09/11/2013) |
| 09/11/2013 | <u>7</u><br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)<u>1</u> Voluntary Petition (Chapter 13) filed by Debtor Luis Angel Lopez) No. of Notices: 1. Notice Date 09/11/2013. (Admin.) (Entered: 09/11/2013) |
| 10/01/2013 | <u>8</u><br>(1 pg) | ORDER and notice of dismissal for failure to file schedules, statements, and/or plan - **Debtor** Dismissed. All pending motions and adversary proceedings are moot and dismissed. (BNC) Signed on 10/1/2013 (RE: related document(s)<u>1</u> Voluntary Petition (Chapter 13) filed by Debtor Luis Angel Lopez, <u>2</u> Meeting (AutoAssign Chapter 13)). (Beezer, Cynthia) (Entered: 10/01/2013) |
| 10/02/2013 | <u>9</u><br>(2 pgs) | Chapter 13 Trustee Periodic Accounting Report . (Cohen (TR), Amrane (SA)) (Entered: 10/02/2013) |
| 10/03/2013 | <u>10</u><br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)<u>8</u> ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (Option A or Option B) (BNC)) No. of Notices: 3. Notice Date 10/03/2013. (Admin.) (Entered: 10/03/2013) |
| 10/29/2013 | <u>11</u><br>(4 pgs) | Notice of Intent to File Trustees Final Report and Account - Chapter 13 Dismissed/Converted . (Cohen (TR), Amrane (SA)) (Entered: 10/29/2013) |

| 12/18/2013 | 12 (3 pgs) | Chapter 13 Trustee's Final Report and Account . (Cohen (TR), Amrane (SA)) (Entered: 12/18/2013) |
| 12/18/2013 | 13 (1 pg) | Declaration re: non-receipt of obj to trustee's final report (Dismissed/Converted Chapter 13 Cases) Filed by. (Cohen (TR), Amrane (SA)) (Entered: 12/18/2013) |
| 12/18/2013 | 14 (1 pg) | Proof of service Filed by (RE: related document(s)12 Chapter 13 Trustee's Final Report and Account (batch)). (Cohen (TR), Amrane (SA)) (Entered: 12/18/2013) |
| 12/23/2013 | 15 (1 pg) | ORDER discharging chapter 13 panel trustee and exonerate bond liability Signed on 12/18/2013. (Bernson, Alicia) (Entered: 12/27/2013) |
| 12/27/2013 | 16 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (RE: related document(s)2 Meeting (AutoAssign Chapter 13)) (Bernson, Alicia) (Entered: 12/27/2013) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 04/30/2018 16:54:22 | | | |
| PACER Login: | mr0094:2601651:0 | Client Code: | CA |
| Description: | Docket Report | Search Criteria: | 8:13-bk-17573-CB Fil or Ent: filed To: 4/30/2018 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| Billable Pages: | 2 | Cost: | 0.20 |

**CLOSED, Repeat-cacb, PlnDue, Incomplete, RepeatPACER, BARDEBTOR, RestrictedDISMISSED**

# U.S. Bankruptcy Court
## Central District of California (Santa Ana)
## Bankruptcy Petition #: 8:17-bk-14036-CB

|  |  |
|---|---|
|  | *Date filed:* 10/11/2017 |
| *Assigned to:* Catherine E. Bauer | *Date terminated:* 02/01/2018 |
| Chapter 13 | *Debtor dismissed:* 10/12/2017 |
| Voluntary | *341 meeting:* 11/14/2017 |
| Asset |  |

*Debtor disposition:* Dismissed for Other Reason

**Debtor**                                              represented by **Luis Angel Lopez Jaen**
**Luis Angel Lopez Jaen**                                                    PRO SE
7822 Hopi Rd
Stanton, CA 90680
ORANGE-CA
714-920-0494
███████████████

**Trustee**
**Amrane (SA) Cohen (TR)**
770 The City Drive South Suite 8500
Orange, CA 92868
714-621-0200

**U.S. Trustee**
**United States Trustee (SA)**
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4593
(714) 338-3400

| Filing Date | # | Docket Text |
|---|---|---|
| 10/11/2017 | <u>1</u><br>(15 pgs; 3 docs) | Chapter 13 Voluntary Petition Individual . Fee Amount $310 Filed by Luis Angel Lopez Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 10/25/2017. Schedule A/B: Property (Form 106A/B or 206A/B) due 10/25/2017. Schedule C: The Property You Claim as Exempt (Form 106C) due 10/25/2017. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 10/25/2017. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 10/25/2017. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 10/25/2017. Schedule H: Your Codebtors (Form 106H or 206H) due 10/25/2017. Schedule I: Your Income (Form 106I) due 10/25/2017. Schedule J: Your Expenses (Form 106J) due 10/25/2017. Declaration About an Individual Debtors Schedules (Form 106Dec) due 10/25/2017. Statement of |

| | | Financial Affairs (Form 107 or 207) due 10/25/2017. Chapter 13 Plan (LBR F3015-1) due by 10/25/2017. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 10/25/2017. Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 10/25/2017. Cert. of Credit Counseling due by 10/25/2017. Statement of Related Cases (LBR Form F1015-2) due 10/25/2017. Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 10/25/2017. Verification of Master Mailing List of Creditors (LBR Form F1007-1) due 10/25/2017. Incomplete Filings due by 10/25/2017. (Bustillos, Denise) (Entered: 10/11/2017) |
|---|---|---|
| 10/11/2017 | **2**<br>(3 pgs) | Meeting of Creditors 341(a) meeting to be held on 11/14/2017 at 02:00 PM at RM 1-154, 411 W Fourth St., Santa Ana, CA 92701.Objection 523 Complaint Due: 1/16/2018. Proofs of Claims due by 2/12/2018. Government Proof of Claim due by 4/9/2018. Confirmation hearing to be held on 12/14/2017 at 01:30 PM at Crtrm 5D, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Catherine E. Bauer (Bustillos, Denise) (Entered: 10/11/2017) |
| 10/11/2017 | **3** | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Luis Angel Lopez Jaen . (Bustillos, Denise) (Entered: 10/11/2017) |
| 10/11/2017 | 4 | Hearing Set re: Request to file new petition by third party filer with previous filing (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Luis Angel Lopez Jaen) Show Cause hearing to be held on 10/12/2017 at 10:00 AM at Crtrm 5D, 411 W Fourth St., Santa Ana, CA 92701. The case judge is Catherine E. Bauer (Firman, Karen) Modified on 10/11/2017 (Firman, Karen). (Entered: 10/11/2017) |
| 10/11/2017 | | Receipt of Chapter 13 Filing Fee - $310.00 by 02. Receipt Number 80070027. (admin) (Entered: 10/11/2017) |
| 10/12/2017 | | Notice of Debtor's Prior Filings for debtor Luis Angel Lopez Jaen Case Number 13-17573, Chapter 13 filed in California Central Bankruptcy on 09/09/2013 , Dismissed for Failure to File Information on 10/01/2013.(Admin) (Entered: 10/12/2017) |
| 10/12/2017 | **5**<br>(2 pgs) | ORDER of dismissal with special restriction-period against re-filing a new bankruptcy case - **Debtor** Dismissed for 180 Day Bar. (BNC-PDF)Barred Debtor Lopez Jaen, Luis Angel starting 10/12/2017 to 4/10/2018 Signed on 10/12/2017 (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Luis Angel Lopez Jaen, 2 Meeting of Creditors Chapter 13). (Firman, Karen) (Entered: 10/12/2017) |

| 10/12/2017 | 6<br>(1 pg) | Notice of dismissal with restriction for against debtor's refiling (BNC) (Firman, Karen) (Entered: 10/12/2017) |
| 10/12/2017 | 7 | Hearing Held on request to file new petition by third party filer with prior filing - CASE DISMISSED W/180 DAY BAR (Firman, Karen) (Entered: 10/13/2017) |
| 10/13/2017 | 8<br>(4 pgs) | BNC Certificate of Notice (RE: related document(s)2 Meeting of Creditors Chapter 13) No. of Notices: 2. Notice Date 10/13/2017. (Admin.) (Entered: 10/13/2017) |
| 10/13/2017 | 9<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Luis Angel Lopez Jaen) No. of Notices: 1. Notice Date 10/13/2017. (Admin.) (Entered: 10/13/2017) |
| 10/13/2017 | 10<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Luis Angel Lopez Jaen) No. of Notices: 1. Notice Date 10/13/2017. (Admin.) (Entered: 10/13/2017) |
| 10/14/2017 | 11<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)6 Notice of dismissal with restriction for against debtor's refiling (BNC)) No. of Notices: 1. Notice Date 10/14/2017. (Admin.) (Entered: 10/14/2017) |
| 10/14/2017 | 12<br>(3 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)5 ORDER of dismissal with special restriction-period against re-filing a new bankruptcy case (BNC-PDF)) No. of Notices: 1. Notice Date 10/14/2017. (Admin.) (Entered: 10/14/2017) |
| 10/30/2017 | 13<br>(4 pgs) | Notice of Intent to File Trustees Final Report and Account - Chapter 13 Dismissed/Converted . (Cohen (TR), Amrane (SA)) (Entered: 10/30/2017) |
| 11/01/2017 | 14<br>(2 pgs) | Trustee's Notice to the debtor(s) that the case may be dismiss or converted at the confirmation hearing (batch) . (Cohen (TR), Amrane (SA)) (Entered: 11/01/2017) |
| 12/05/2017 | 15<br>(1 pg) | Declaration re: non-receipt of obj to trustee's final report (Dismissed/Converted Chapter 13 Cases) Filed by. (Cohen (TR), Amrane (SA)) (Entered: 12/05/2017) |
| 01/03/2018 | 16<br>(3 pgs) | Chapter 13 Trustee's Final Report and Account . (Cohen (TR), Amrane (SA)) (Entered: 01/03/2018) |
| 01/04/2018 | 17<br>(1 pg) | Proof of service Filed by (RE: related document(s)16 Chapter 13 Trustee's Final Report and Account (batch)). (Cohen (TR), Amrane (SA)) (Entered: 01/04/2018) |

4/30/2018                              CM/ECF - U.S. Bankruptcy Court (v6.2.1 - LIVE)

| 02/01/2018 | 18 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (Le, James) (Entered: 02/01/2018) |
|---|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/30/2018 16:53:27 | | | |
| **PACER Login:** | mr0094:2601651:0 | **Client Code:** | CA |
| **Description:** | Docket Report | **Search Criteria:** | 8:17-bk-14036-CB Fil or Ent: filed To: 4/30/2018 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |